RECEIVED
NOV 27 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRETT STUART WHITEHEAD, individually and on behalf of Michael Tristan Whitehead, a minor, ROBIN CHASE WHITEHEAD and STEPHANIE W. RUSHING | CIV. ACT. NO. 16-00176 |
| -vs- | JUDGE DRELL |
| INTERNATIONAL PAPER CO. | MAG. JUDGE PEREZ-MONTES |

MEMORANDUM RULING

Now before the court is a motion for summary judgment filed by defendant, International Paper Co. ("IP"), in the above-captioned case. (Doc. 53). For the reasons explained below, the court finds that IP's motion should be GRANTED.

I.  BACKGROUND

This case arises out of an unfortunate incident occurring on or about January 30, 2015 at IP's Red River Mill facility in Campti, Louisiana. On the date at issue in this case, IP's contractor, Turner Industries, Inc. ("Turner" or "Contractor") conducted repairs to a water supply line and fire header pursuant to Purchase Order 8865119 ("purchase order"). (Doc. 53-3). Phillip Stuart Whitehead ("Whitehead"), a Turner employee, sustained fatal injuries when the catwalk floor upon which he was walking collapsed, causing him to fall approximately eleven (11) feet to a concrete floor below. (Doc. 1-3 at ¶¶ 5-6).

Plaintiffs are the surviving children of Whitehead and bring wrongful death and survival actions against IP. (Id. at ¶ 15). IP asserts, inter alia, its status as Whitehead's statutory employer

1

and argues, thereby, that Plaintiffs' exclusive remedy in this matter lies within the Louisiana Workers' Compensation Act ("LWCA"). (Doc. 9).

IP and co-defendant, Hunter Whitely ("Whitely") filed a prior motion for summary judgment, urging dismissal of Whitely on the basis of improper joinder. (Doc. 11). The court adopted the report and recommendation of the magistrate judge, thereby granting defendants' motion and dismissing Whitely from the case on the basis that he had only general administrative responsibilities at IP's Red River Mill, but not the sort of oversight giving rise to personal liability in this matter. (Docs. 28, 29).

IP's instant motion focuses on its statutory employer defense, seeking dismissal of all claims against it in this suit under the LWCA's exclusive remedy, barring tort recovery. The motion is fully briefed and the court carefully considered the law and argument advanced by the parties.

## II. APPLICABLE STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

## III. ANALYSIS

We begin with the threshold issue of whether determination of statutory employer status is a question of law to be decided by the court or one of fact reserved for the jury. While plaintiffs

2

assert Brewton v. Underwriters Insurance Co., 848 So.2d 586 (La. 2003) instructs statutory employer status is a fact question reserved to the jury, the court finds this argument to be without merit. As pointed out in IP's reply memorandum, the Brewton holding is not that statutory employer status may not be decided by the court, but rather that the 1990 amendment to the Louisiana Constitution (Art. V, Section 16), whereby original jurisdiction over workers' compensation cases was removed from district courts and vested in the Office of Workers' Compensation, did not act to deprive a plaintiff in a tort suit from the right of jury trial in cases where the issue of statutory employer status is raised as a defense to tort liability. Importantly, the court noted that the question of statutory employer status in Brewton could have been resolved via summary judgment, had such motion been filed in that case. (Id. at 589 n. 2). Indeed, jurisprudence indicates pretrial motions based upon this issue are routinely filed and considered, further affirming that Brewton does not stand for the proposition that such issue is one of fact, inappropriate for summary judgment. See, *e.g.*, Wright v. Excel Paralubes, 807 F.3d 730 (5th Cir. 2015) (affirming district court's grant of summary judgment in favor of defendant based on statutory employer presumption based on contractual language under La. R.S. 23:1061(A)); Ramos v. Tulane University of Louisiana, 951 So.2d 1267 (La. App. 4 Cir. 2007) (affirming a grant of summary judgment to defendant by the trial court based on contractual language under La. R.S. 23:1061(A)).

The LWCA designates workers' compensation as the exclusive remedy for an employee injured while in the course of performing work undertaken by his employer, "principals" or "partners" of a principal. La. R.S. 23:1032(A)(1)(a) - (b); 1061(A)(1), (2). A "principal" is defined as "any person who undertakes to execute any work which is part of his trade, business, or occupation in which he was engaged at the time of the injury. Id. When a principal hires a

contractor to complete some or all of the work undertaken by the principal, the principal is the "statutory employer" and privy to the same exclusive remedy protections against claims by the contractor's employees as against its own employees. Id. Within the LWCA, one of two methods by which a principal is recognized as a statutory employer is by written contract that expressly designates the principal as the statutory employer to the contractor's employees. La. R.S. 23:1061(A)(3). In the context of a lawsuit, such a contract creates the rebuttable presumption that the principal was the statutory employer at the time of the work and injury. In order to overcome the statutory employer presumption, an employee must show that the work performed "is not an integral part of or essential to the ability of the principal to generate that principal's good, products, or services." Id.

In response to jurisprudence it found to undesirably limit the terms "integral" or "essential," the Louisiana legislature amended R.S. 23:1061(A)(3) in 1997 to provide its current language. Everett v. Rubicon, 938 So.2d 1032, 1035-37 (La. 1 Cir. 2006) citing, *inter alia*, Kirkland v. Riverwood International USA, Inc., 681 So.2d 329 (La. 1996) and Berry v. Holston Well Service, Inc., 488 So.2d 934 (La. 1986). In its current form, § 1061(A)(3) is interpreted liberally by courts across Louisiana and their federal counterparts. Wright v. Excel Paralubes, 807 F.3d 730 (5th Cir. 2015); Prejean v. Maintenance Enterprises, Inc., 8 So.3d 766 (La. App. 4 Cir. 2009).

In the instant case, IP introduces the January 2015 purchase order, by which IP contracted with Turner for the repair of water supply lines and the fire header in the Old Recovery Building, as the operative contract for purposes of its statutory employer status (Doc. 53-3). The following language is included at page 2:

> IT IS FURTHER AGREED between International Paper Company and ("Contractor") that the work being performed by Contractor is part of International Paper Company#s /sic/ trade, business, or occupation, and the work performed by the Contractor pursuant to this agreement is an

4

integral part of and essential to the ability of International Paper Company to generate its' goods, products and/or services. Accordingly, pursuant to La. R.S. 23:1061, International Paper Company is the statutory employer of Contractor#s /sic/ employees, including both direct or statutory employees, performing work under this agreement. (Id. at p. 2)

Based on the purchase order's quoted language expressly designating IP as the statutory employer of Turner, identified in the provision as "Contractor[,]" we find that the purchase order creates a rebuttable presumption of IP's statutory employer status as to Turner's employees, including Whitehead.

In order to rebut the presumption of statutory employer status, plaintiffs must show that "the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061(3).

IP's Red River Mill is a paper mill specializing in the production of linerboard. (Doc. 53-4, Decl. of Baker at ¶ 3). The Old Recovery Building is also known as the No. 1 and No. 2 Recovery Boiler Building. IP submits the declaration of Raymond Herring, IP's Power and Recovery Operations/Maintenance Coordinator, detailing the various components housed within the Old Recovery Building: motor control centers on floors 2 and 4; electrical panels and high voltage lines, Stripper Off Gas ("SOG") piping, Low Volume High Concentration ("LVHC") piping, Super-Concentrator Non-Condensable Gas ("SCNCG") piping, lines leading to the 80% black liquor tank and the sole access to the top of this tank. Additionally, this building contains a fire protection system comprised of standpipe fire water lines and hoses. (Doc. 53-6 Decl. of Herring at ¶¶ 10-11). Herring discovered the leak in the fire water line on January 13, 2015 while in the basement of the Old Recovery Building. He traced the leak to a pipe between the fifth and sixth floors. (Id. at ¶ 3). Herring explained that

5

> [t]he leak had to be stopped to ensure that there was not a blowout of the fire water line which would result in a loss of pressure of the fire water system for the entire mill. The fire water header line in the Old Recovery Building is under pressure and, if the leak is not repaired, water could damage items and/or material located below the fifth floor of the Old Recovery Building. (Id. at ¶ 6).

Similarly, Adam Goodman, an Certified Fire Protection Specialist, cited Life Safety Code (NFPA 101), adopted by the State of Louisiana, for its requirement that, essentially, "if a fire protection system is present in a building, it must be maintained in order to provide the same level of protection for which it was installed." (Declaration of Goodman, Doc. 53-8 at ¶ 17). Goodman opines that the repair of the standpipe leak was necessary for fire code compliance and plant safety. (Id. at ¶¶ 19-22).

Plaintiffs' opposition centers around the argument that the Old Recovery Building is "abandoned." Plaintiffs allege that because the work Whitehead was performing under the purchase order was located in an abandoned building, the work cannot reasonably be characterized as integral or essential in this case. (Doc. 56 at p. 7). In support of this theory, plaintiffs cite the testimony of Brett Whitehead, son of the deceased plaintiff, who is employed by IP. Brett Whitehead testified that, other than piping running through the building, the Old Recovery Building was not used for any known purpose. (Doc. 56-4 at 23:16-24:1). Similarly, plaintiffs introduce testimony by former defendant Whitely, the mill manager at the time of the incident, who explained that "[a] large portion of the old recovery building was considered an abandoned area." (Doc. 56-3 at 26:5-6).

Our examination of the evidence submitted in this case reveals that, just as in Salsbury v. Hood Industries, Inc., there exists no factual dispute, but rather a dispute as to what conclusion should be drawn from these facts. 982 F.2d 912, 916 (5th Cir. 1993). IP denies that the Old Recovery Building is entirely abandoned, offering the Declaration of Joel Mertens, IP's

6

Manufacturing Excellence Leader. Mertens echoes the testimony of Herring and Goodman in stating plainly that the entire Old Recovery Building is not abandoned, though there are portions of floors 1 – 5 that are designated as abandoned. Mertens, like Herring and Goodman, details the several component systems in place at the Old Recovery Building and goes on to explain that failure to repair the leak at issue would negatively impact the mill's ability to produce linerboard. (Declaration of Mertens, Doc. 53-7 at ¶¶ 8-14).

Plaintiff asks the court to find that, based upon what it argues is rare usage, the Old Recovery Building is not essential or integral to IP's work in making linerboard. Under the expansive meaning attributed to these terms by Louisiana federal and state courts, such a result would be error. Moreover, under the plain meaning of these terms, we find it no stretch to deem the Old Recovery Building both essential and integral. The testimonial evidence offered by both parties demonstrates that this building houses an important fire prevention aspect of IP's operation, if nothing else. It does not challenge the imagination to see how such a component would play an essential or integral part in the daily operation of a paper mill, particularly as it relates to the issues of safety and code compliance.

The court also agrees with IP's observation that the purchase order need not have been signed to be operative in this case. (Doc. 53-2 at p. 5, n. 1). Under Louisiana law, applicable to the contract at issue here, acceptance by performance is a sound theory of contract law, reflected in jurisprudence. Broussard v. Arthur Dooley & Son, Inc., 484 So.2d 795, 798 (La. 1 Cir. 1986) citing St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La. App. 3d Cir. 1983); Salim v. Louisiana State Board of Education, 289 So.2d 554 (La. App. 3 Cir. 1974).

For the foregoing reasons, the court finds that the repair work being performed by Whitehead as a Turner employee at the time of his death was essential or integral to IP's work as

a producer of linerboard. Accordingly, Plaintiffs fail to rebut the presumption of statutory employer status IP enjoys as a result of the purchase order's specific language pursuant to La. R.S. 23:1061(A)(3). Given these findings, Plaintiffs' tort claims must be denied and dismissed with prejudice in recognition that the LWCA provides the exclusive remedy for Whitehead's injuries under Louisiana law.

Based upon the foregoing, IP's instant motion will be GRANTED in full by separate judgment in conformity with these findings.

Alexandria, Louisiana
November 26, 2018

DEE D. DRELL
UNITED STATES DISTRICT JUDGE